1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  LESLIE RITCHOTTE,                  )  1:04-CV-6748-SMS
                                      )
11              Plaintiff,            )  DECISION AND ORDER DENYING
                                      )  PLAINTIFF'S SOCIAL SECURITY
12       v.                           )  COMPLAINT (DOC. 1)
                                      )
13                                    )  ORDER DIRECTING THE ENTRY OF
    JO ANNE B. BARNHART,              )  JUDGMENT FOR DEFENDANT JO ANNE B.
14  Commissioner of Social            )  BARNHART, COMMISSIONER OF SOCIAL
    Security,                         )  SECURITY, AND AGAINST PLAINTIFF
15                                    )  LESLIE RITCHOTTE
                Defendant.            )
16                                    )
                                      )
17  _____)

18       Plaintiff, Leslie Ritchotte, who is proceeding with counsel,

19  seeks judicial review of a final decision of the Commissioner of

20  Social Security (Commissioner) denying Plaintiff's application

21  for disability insurance benefits pursuant to Title II of the

22  Social Security Act (Act) and supplemental security income

23  pursuant to Title XVI of the Act. Pursuant to 28 U.S.C. §

24  636(c)(1), the parties have consented to the jurisdiction of the

25  Magistrate Judge to conduct all further proceedings, including

26  the entry of a final judgment.[1] The matter is currently before

27  _____

28       [1]Judge Oliver W. Wanger ordered the case assigned to the undersigned Magistrate Judge for all purposes on
    April 25, 2005.

the Court on the parties' briefs, which have been submitted
without oral argument to the Honorable Sandra M. Snyder, United
States Magistrate Judge.

Prior Proceedings

On May 24, 2001, Plaintiff applied for supplemental security
income payments and disability insurance benefits, alleging
disability beginning on October 1, 1998, due to a herniated disc,
arthritis, and lower back pain. (A.R. 117-119, 414-435.)
Plaintiff's claim was denied initially and on reconsideration.
(A.R. 92-95, 97-101, 436-439, 440-444.) Plaintiff then requested
a hearing before an administrative law judge (ALJ) of the Social
Security Administration (SSA). On September 11, 2002, Plaintiff
appeared with an attorney and testified before the ALJ, James N.
Baker. On November 7, 2002, the ALJ denied Plaintiff's
application for benefits. (A.R. 46-52.) Plaintiff appealed the
ALJ's decision to the Appeals Council. On October 27, 2004 the
Appeals Council denied Plaintiff's request for review. (A.R. 6-
10.)

On December 27, 2004, Plaintiff filed the complaint in the
instant action; the administrative record was lodged by Defendant
on April 14, 2005. On May 31, 2005, Plaintiff filed an opening
brief. On August 3, 2005, Defendant filed a brief in opposition.

Administrative Findings

The ALJ concluded that Plaintiff's impairment, consisting of
a herniated disc of the lumbar spine, was severe but did not
medically equal a listed impairment. (A.R. 51.) The ALJ found
that Plaintiff's residual functional capacity was to lift and
carry five pounds frequently and ten pounds occasionally; stand

and walk two hours in an eight-hour workday; sit for six hours in an eight-hour workday; periodically alternate between sitting and standing; occasionally balance, stoop, kneel, crouch, and crawl; and no climbing or use of ladders, ropes, or scaffolds.[2] (A.R. 72.)

Although Plaintiff's exertional and non-exertional impairments precluded him from performing the full range of sedentary work, the ALJ found that he was capable of performing a narrow range of sedentary work as defined in 20 C.F.R. §§ 404.1567 and 416.967 (2002).[3] (A.R. 51.) The ALJ concluded that Plaintiff was not disabled because there were a significant number of jobs in the national economy that he could perform. (A.R. 51.) After erosion to accommodate Plaintiff's specific limitations, these included (1) small parts assembler, with 6,000 jobs nationally and 2,000 jobs regionally, (2) cashier II, with 9,800 jobs nationally and 3,150 regionally, and (3) account clerk withy 8,000 jobs nationally and 2,400 regionally. (A.R. 51.) The ALJ further determined that Plaintiff's allegations regarding his limitations were not totally credible. (A.R. 51.) Thus, Plaintiff was not disabled.

## Issues Presented

The following issues are presented for decision:

(1) Whether the ALJ erred in rejecting Plaintiff's

[2]Although the ALJ did not state the precise details of Plaintiff's residual functional capacity in his opinion, he cited and credited the opinions of an examining physician and two nonexamining state agency physicians and found that Plaintiff was capable of performing a narrow range of sedentary work. Plaintiff's residual functional capacity is taken from the ALJ's hypothetical to the vocational expert. (A.R. 72.)

[3]All references to the Code of Federal Regulations are to the 2002 version unless otherwise stated.

1  subjective complaints; and

2      (2) Whether the ALJ improperly rejected the opinion of

3  Plaintiff's treating physician in determining Plaintiff's

4  residual functional capacity.

5                          Facts

6      I. Plaintiff's Testimony

7      Plaintiff was born on February 20, 1956, and was forty-six

8  years old at the time of the hearing. (A.R. 117.) He left school

9  before the eleventh grade and had worked the past fifteen years

10 as an auto parts salesman, a store manager, and a painter. (A.R.

11 58-60.) Plaintiff initially stopped working in 1994 and worked

12 thereafter for only a three-month period in 1998. (A.R. 59-61.)

13     Plaintiff testified that he injured his back in 1998 and

14 lost his job. (A.R. 61.) He suffered from constant pain in his

15 back which radiated down his legs. (A.R. 60-61.) He experienced

16 paralysis in his left arm and side. (A.R. 61-62, 67, 69-70.) He

17 could walk for only thirty minutes before experiencing

18 significant pain and could sit for only forty-five minutes before

19 needing to lie down. (A.R. 62-63.) Plaintiff had serious

20 difficulty with lifting due to back pain and had not lifted

21 anything recently. (A.R. 63.) However, Plaintiff testified that

22 he could lift a gallon of milk without any problems.[4] (A.R. 64.)

23 Plaintiff's pain medication made him feel better, but the side

24 effects bothered him. (A.R. 61.)

25     Plaintiff lived with his wife, who was disabled, and his

26 fifteen-year-old daughter. (A.R. 64-65.) On a typical day,

27 ───────────────

28      [4]The ALJ took judicial notice that a gallon of milk weighed
   approximately eight pounds. There were no objections. (A.R. 64).

                              4

Plaintiff got out of bed at ten o'clock in the morning and drank a cup of coffee, took his medication, and sat outside on the patio. (A.R. 65.) His only other activities consisted of watching television and reading books. (A.R. 66.)

II. <u>Medical History</u>

Plaintiff underwent a discectomy in 1991 for a disc herniation on the left side. (A.R. 193.) After injuring his back in October 1998, Plaintiff saw Dr. Thomas Wenstrup, a family practitioner. Dr. Wenstrup noted complaints of back pain and found limited lumbar flexion, mild back spasms, mildly positive straight leg raising, and limited ankle flexion. (A.R. 306.) In February 1999, Plaintiff went for a follow up with Dr. Wenstrup, who found equal bilateral ankle flexion and no sign of back spasms. (A.R. 304.) Dr. Wenstrup recommended physical therapy. (A.R. 304.)

On June 3, 1999, Plaintiff received treatment at the Urgent Care department of the Health Services Agency after exacerbating his symptoms by "pulling" his back several days earlier. (A.R. 299.) Plaintiff received Tylenol and Soma. (A.R. 299.) Throughout 2000 and 2001, Plaintiff went to the hospital with similar complaints of back pain approximately seven times. (A.R. 237-57, 260-68, 278, 302, 309.) The record contains no evidence of any prolonged stay or invasive treatment.

Plaintiff saw Dr. Wenstrup again in July 1999 and complained of pain in the right lower back and leg. (A.R. 297.) Although he found that Plaintiff experienced a positive straight leg raise on the right side, Dr. Wenstrup noted that Plaintiff experienced only minimal pain with movement. (A.R. 297.) Dr. Wenstrup

diagnosed Plaintiff with right lumbar radiculopathy and spinal stenosis in August 1999. (A.R. 293.) Plaintiff continued to see Dr. Wenstrup in one to three-month intervals up to the time of the hearing in 2002. (A.R. 331.)

In August 1999, Plaintiff underwent an MRI and received a referral to Dr. Dikran Bairamian, a neurological specialist. (A.R. 295.) Dr. Bairamian found that Plaintiff suffered from a herniated disc at L4-5 on the right side and had postoperative changes at L5-S1 on the left side stemming from Plaintiff's discectomy in 1991. (A.R. 289.) Dr. Bairamian found that Plaintiff had sciatic notch tenderness, but at several follow-up appointments in 2000 and 2001 he noted that the tenderness was no longer present, and Plaintiff did not suffer from sciatica. (A.R. 273, 275, 283, 289.) Dr. Bairamian further noted that Plaintiff did not suffer from bowel or bladder dysfunction. (273, 275, 288.) Dr. Bairamian advised Plaintiff that surgery carried a seventy-percent chance of diminishing the pain in his right leg but would not improve the pain in his left leg or back. (A.R. 283.) Plaintiff chose not to undergo surgery. (A.R. 67.)

Plaintiff was examined by Dr. Lakshmi Madireddi on July 25, 2001. (A.R. 313.) Based on a physical examination and review of Plaintiff's MRI's, Dr. Madireddi diagnosed Plaintiff with a history of lumbar disc disease and chronic lumbar pain. (A.R. 313-14.) Plaintiff declined to perform lumbar ranges of motion but had a full range of motion in his upper and lower extremities and cervical spine. (A.R. 313-314.)  Dr. Madireddi found that Plaintiff could stand, walk, and sit for six hours each but would need to change positions every hour; he could lift and carry

twenty pounds occasionally and ten pounds frequently; and he should avoid stooping, crouching, and crawling. (A.R. 313-314.)

On August 16, 2001, state agency physician Dr. Jansen evaluated Plaintiff's residual functional capacity. (A.R. 323-330.) Dr. Jansen found that Plaintiff could sit for six hours and stand and walk for two hours in an eight-hour day but needed to alternate sitting and standing periodically; lift ten pounds occasionally and five pounds frequently; and should not climb ladders, ropes, or scaffolds, but could occasionally balance, stoop, kneel, crouch, or crawl. (A.R. 323-330.)

Dr. Wenstrup completed a disability questionnaire on November 28, 2001. (A.R. 331-338.) He found that Plaintiff could sit for two hours and stand or walk for only one hour in an eight-hour day, with the need to alternate between sitting and standing every hour for fifteen minutes. (A.R. 331-334.) Plaintiff could lift five pounds occasionally and had moderate limitations in his ability to grasp, turn, and twist objects. (A.R. 334-5.) Plaintiff was unable to handle a "low stress" work position. (A.R. 336.)

Scope and Standard of Review

_____Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

7

1  (9th Cir. 1975). It is "such relevant evidence as a reasonable

2  mind might accept as adequate to support a conclusion."

3  Richardson, 402 U.S. at 401. The Court must consider the record

4  as a whole, weighing both the evidence that supports and the

5  evidence that detracts from the Commissioner's conclusion; it may

6  not simply isolate a portion of evidence that supports the

7  decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

8  It is immaterial that the evidence would support a finding

9  contrary to that reached by the Commissioner; the determination

10 of the Commissioner as to a factual matter will stand if

11 supported by substantial evidence because it is the

12 Commissioner's job, and not the Court's, to resolve conflicts in

13 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

14 Cir. 1975).

15      In weighing the evidence and making findings, the

16 Commissioner must apply the proper legal standards. Burkhart v.

17 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

18 review the whole record and uphold the Commissioner's

19 determination that the claimant is not disabled if the

20 Commissioner applied the proper legal standards, and if the

21 Commissioner's findings are supported by substantial evidence.

22 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

23 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

24 the Court concludes that the ALJ did not use the proper legal

25 standard, the matter will be remanded to permit application of

26 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

27 Cir. 1987).

28 ///

Analysis

      I. Disability

     In order to qualify for benefits, a claimant must establish
that she is unable to engage in substantial gainful activity due
to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of
not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).
A claimant must demonstrate a physical or mental impairment of
such severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. Terry v. Sullivan, 903 F.2d
1273, 1275 (9th Cir. 1990).

     The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 20 C.F.R. § 404.1520 (2002); 2) whether solely on the
basis of the medical evidence the claimed impairment is severe,
that is, of a magnitude sufficient to limit significantly the

9

individual's physical or mental ability to do basic work

activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the

basis of medical evidence the impairment equals or exceeds in

severity certain impairments described in Appendix I of the

regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant

has sufficient residual functional capacity, defined as what an

individual can still do despite limitations, to perform the

applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and

5) whether on the basis of the applicant's age, education, work

experience, and residual functional capacity, the applicant can

perform any other gainful and substantial work within the

economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is

essentially the same. See, 20 C.F.R. § 416.920.

II. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and

convincing reasons, supported by substantial evidence, for

discrediting Plaintiff's subjective complaints regarding the

severity of symptoms relating to his impairment.

The existence and severity of a person's reaction to a

physical ailment, such as pain, are subjective phenomena, the

extent of which cannot be objectively measured. Byrnes v.

Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a

claimant's subjective complaints, the ALJ must provide specific,

cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821,

834 (9th Cir. 1995). Once the claimant introduces medical evidence

of an underlying impairment that could reasonably be expected to

produce some degree of the subjective symptoms, the Commissioner

may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see, 20 C.F.R. § 416.929(c).

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1   See also Bunnell v. Sullivan, 947 F.2d at 346.

2   Here, the ALJ found incredible Plaintiff's claims of left
3   arm paralysis and severe and disabling pain stemming from his
4   back condition. (A.R. 49-50.) The ALJ rejected these claims in
5   part because there was not significant objective evidence to
6   support a finding of disability. (A.R. 49.) Although the
7   inconsistency of objective findings with subjective claims may
8   not be the sole reason for rejecting subjective complaints of
9   pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is
10  one factor which may be considered with others. Moisa v.
11  Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v.
12  Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

13  Plaintiff repeatedly testified that he suffered from
14  paralysis of his left arm, and in one instance, of his "left
15  side." (A.R. 61, 62, 67, 70, 71.) However, as noted by the ALJ,
16  Plaintiff's treatment notes from both Dr. Wenstrup and Dr.
17  Bairamian contain absolutely no evidence of any paralysis. (A.R.
18  273, 275, 283, 289, 297, 293, 303-304, 306-307, 331-338, 445.)
19  Dr. Wenstrup's letter of November 2001, which described
20  Plaintiff's condition and symptoms in comprehensive detail, also
21  failed to mention Plaintiff's alleged paralysis. (A.R. 390-392.)
22  The record contains substantial evidence supporting the ALJ's
23  conclusion that Plaintiff's claims of paralysis were not
24  corroborated by significant objective medical evidence.

25  As to Plaintiff's claims of disabling pain in the legs and
26  back, Plaintiff's medical records contain few objective findings
27  to corroborate the alleged severity of Plaintiff's claims. (A.R.
28  49-50.) An MRI taken in November 1999 revealed postoperative

changes at L5-S1 (stemming from Plaintiff's discectomy in 1991) and a moderate to large herniation at L4-5, but did not show any loss of vertebral height or intervertebral foramina. (A.R. 287, 289). Plaintiff did not have severe complications of disc herniation such as bowel or bladder dysfunction. (A.R. 283, 288.) Furthermore, Dr. Bairamian found that Plaintiff showed no indications of central cervical cord compression, clonus, or Hoffman's sign. (A.R. 273.) Dr. Bairamian also reported that Plaintiff did not suffer from sciatica. (A.R. 273.) The Court notes that Dr. Wenstrup, a family practitioner, diagnosed Plaintiff with radiculopathy, a disorder of the nervous system. However, Plaintiff's neurological specialist, Dr. Bairamian, did not support Dr. Wenstrup's diagnosis of radiculopathy. (A.R. 273, 275, 283, 288-89.)

Plaintiff points to back spasms, sciatic notch tenderness, reduced lumbar range of motion, diminished ankle raises, and reduced sensation in the lower extremities as objective evidence consistent with his alleged pain. One of Plaintiff's treating physicians, Dr. Wenstrup, found that Plaintiff suffered from mild back spasms in December 1998, but found no evidence of back spasms in February 1999 or thereafter. (A.R. 304, 306.) Dr. Bairamian's treatment notes from the same period fail to mention any back spasms, but there is one indication of sciatic notch tenderness. (A.R. 289.). However, at Plaintiff's following appointments, Dr. Bairamian noted that Plaintiff did not have sciatic notch tenderness. (A.R. 275, 283.) Although the record contains some objective evidence of Plaintiff's pain, including a reduced lumbar range of motion, diminished sensation in the lower

extremities, and diminished ankle raises, some of the indicators include inherently subjective components. For instance, Plaintiff declined to perform lumbar ranges of motion during a consultative examination by Dr. Madireddi, but he performed the same evaluative exercise for his treating physician, Dr. Wenstrup. (A.R. 306, 314.) Considering all the evidence in the record, the ALJ properly exercised his prerogative to resolve conflicts in the evidence. See Sorenson, 514 F.2d at 1119.  Accordingly, the record contains substantial evidence supporting the ALJ's conclusion that objective medical evidence did not corroborate the alleged severity of Plaintiff's pain.

The ALJ further noted that Plaintiff received only conservative treatment in the form of medication and bed rest. (A.R. 50.) It is appropriate for an ALJ to consider use of conservative treatment in rejecting a claimant's subjective complaints. Soc. Sec. Ruling 96-7p and 20 C.F.R. § 416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991). Plaintiff took Tylenol and other pain medication for a sustained period from 1998 to 2001. (A.R. 278, 283, 288, 298, 306.) Plaintiff's physician recommended bed rest for several days in January 2001, and Plaintiff received prescriptions for Soma and Vicodin. (A.R. 244, 273, 275, 281, 285.) In April 2001, Plaintiff discussed the possibility of surgery with Dr. Bairamian. Dr. Bairamian advised Plaintiff that surgery had a seventy percent chance of success for helping Plaintiff's right leg pain but would not cure his back pain. (A.R. 273.) Plaintiff decided not to pursue the surgical option, and the record contains no

evidence of further treatment by Dr. Bairamian following the
April 2001 appointment. (A.R. 67.) Accordingly, the record
supports the ALJ's conclusion that Plaintiff received
conservative treatment for his pain.

The ALJ found that Plaintiff had a low level of credibility
due to the unfounded claims of paralysis in his left arm and side
made during his hearing. (A.R. 49.) An ALJ may consider whether
the Plaintiff's testimony is believable or not in rejecting a
claimant's subjective complaints. Verduzco v. Apfel, 188 F.3d
1087, 1090 (9th Cir. 1999). As discussed above, the record
contains no evidence that Plaintiff suffered from paralysis in
the left arm or side.

Plaintiff's counsel alleges that Plaintiff misunderstood the
meaning of the word "paralysis" during the hearing, and promptly
corrected his mistake. (Pl.'s Br. 20.) Plaintiff made the
following statements regarding his alleged paralysis:

> Q: Can you describe the pain in your lower
> part of your back?
> A: It's like a sharp and pressing pain. And now
> it's caused me to have paralysis in my arm -- my
> left arm.
> ...
> Q:Well, how come you're in pain now if you took
> the medication?
> A: Because of my paralysis in my arm. It doesn't
> help my arm. It helps my back for some limitation
> of what I do, but it doesn't help my paralysis
> for my arm. My arm is constantly in pain. I get
> numbing and I get a burning sensation through
> this left arm.
> ...
> Q: Can you use your left arm at all?
> A: In what situation are you talking about.
> Q: Anything. Can you use it for anything? Can
> you move it?
> A: Yes, I can move it.
> ...
> Q: And I wrote down that you have pain that
> radiates down your left leg.

```
A: Yes.
Q: Does it radiate down your right leg, too?
A: I've had problems with the right leg before,
yes.
Q: How about now, though?
A: It's mostly -- my paralysis is on my left side
now.
Q: Well, I'm talking about pain, not -- you
understand the difference between paralysis and
pain?
A: My pain is on my left side.
...
```

(A.R. 61, 62, 69-70.)

Because Plaintiff himself independently testified to a distinct causal relationship between his back pain and the alleged paralysis of his left arm, it appears that Plaintiff conceptually distinguished pain from paralysis. (A.R. 61.) The hearing testimony does not otherwise indicate that Plaintiff was unable to understand the common meaning of the word "paralysis." The Court recognizes that opposing inferences regarding Plaintiff's knowledge of paralysis could reasonably be drawn from the testimony above. However, where evidence is contradictory or inconclusive, resolution of credibility issues and conflicts in the testimony are functions solely of the Commissioner. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff lacked credibility due to his allegations of paralysis.

As an additional reason for rejecting Plaintiff's subjective complaints, the ALJ found that Plaintiff did not have a consistent record for treatment of his back condition. (A.R. 49.) An ALJ may consider the frequency of a claimant's medical treatment in evaluating his or her credibility. Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir. 1998). The record indicates that

Dr. Wenstrup treated Plaintiff every one to three months from December 1998 through December 2002. (A.R. 280-306, 331.) Plaintiff also saw Dr. Bairamian, a neurosurgeon, four times between November 1999 and April 2001. (A.R. 273, 275, 283, 288-289.) In addition, Plaintiff logged approximately seven hospital visits between December 1998 and January 2001. (A.R. 237-57, 260-68, 278, 302, 309.) The record indicates that all of Plaintiff's visits to both his physicians and the hospital stemmed from his complaints of back pain. Given the relatively short and regular intervals between Plaintiff's medical visits, the ALJ's finding of inconsistent treatment is incompatible with the evidence in the record. Accordingly, the ALJ's conclusion that Plaintiff did not have a consistent record for treatment of his back condition is not supported by substantial evidence.

However, the Court finds that the ALJ did not ultimately err in rejecting Plaintiff's subjective complaints. Even though one factor relied upon by the ALJ was not supported by the record, the ALJ nevertheless articulated other clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints of pain. Cf. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004). Thus, the Court rejects Plaintiff's challenge to the ALJ's credibility determination.

III. Medical Opinions

Plaintiff argues that the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Dr. Wenstrup regarding Plaintiff's residual functional capacity.

1   Plaintiff points to Dr. Wenstrup's findings, including

2   right-sided disc herniation at L4-5, lumbar radiculopathy,

3   decreased sensation in the lower extremities, and decreased ankle

4   flexion. (A.R. 293, 306, 390-91.) Plaintiff argues that the ALJ

5   ignored these findings and improperly rejected Dr. Wenstrup's

6   assessment of Plaintiff's residual functional capacity, which

7   limited Plaintiff to sitting for no more than two hours in an

8   eight-hour day and standing and walking no more than one hour in

9   an eight-hour day, with the need to alternate between sitting and

10  standing every hour. (A.R. 331-34.) Dr. Wenstrup further opined

11  that Plaintiff was incapable of handling even a low-stress work

12  position and faced unspecified family problems and depression.

13  (A.R. 336.)

14  The opinion of a treating physician is entitled to deference

15  because of a greater opportunity to observe the patient as an

16  individual and because the purpose of the relationship is to cure

17  the patient. Morgan v. Commissioner of Social Sec. Admin., 169

18  F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard a

19  treating physician's opinion whether or not it is contradicted.

20  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

21  A treating physician's opinion that is controverted by other

22  medical opinions may be rejected by an ALJ only if specific,

23  legitimate reasons for doing so are provided and supported by

24  substantial evidence in the record. Rodriguez v. Bowen, 876 F.2d

25  759, 762 (9th Cir. 1989). This burden is met by stating a detailed

26  and thorough summary of the facts and conflicting clinical

27  evidence, stating the interpretation of the evidence, and making

28  findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). A

18

failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. <u>Cotton v. Bowen</u>, 799 F.2d at 1408.

The medical opinion of a non-treating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The findings of a nontreating, nonexamining physician can amount to substantial evidence so long as other evidence in the record supports those findings. <u>Saelee v.Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).

In the present case, the ALJ rejected Dr. Wenstrup's opinion due to an uncritical acceptance of Plaintiff's subjective complaints. (A.R. 49.) Where a treating physician's medical opinion is based largely on the claimant's subjective description of his or her symptoms, and the ALJ has properly discredited the claimant's claims regarding those subjective symptoms, the ALJ may reject the treating physician's medical opinion. <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989). Here, the ALJ's rejection of Plaintiff's subjective claims of pain and limited functioning has been previously examined; accordingly, Plaintiff's subjective complaints would not require a conclusion

contrary to that of the ALJ.

Review of Dr. Wenstrup's treatment notes indicates that Plaintiff made various complaints of pain in the back, neck, and legs. (A.R. 292, 298, 305-6, 398, 401). However, Dr. Wenstrup's notes detail significant unexplained fluctuations in the levels and focal points of Plaintiff's pain. In 1999, Dr. Wenstrup noted that Plaintiff's pain was "not any better," then noted that it was "not any worse" over a period of time, but later stated that it "waxes and wanes." (A.R. 292, 293, 297.) Dr. Wenstrup also found that Plaintiff experienced only minimal discomfort with movement, but later reported on a disability questionnaire that Plaintiff could not stand or sit without experiencing pain. (A.R. 297, 333.) These pain-related inconsistencies in Dr. Wenstrup's treatment notes, combined with the dearth of objective evidence corroborating Dr. Wenstrup's opinion, support the ALJ's conclusion that Dr. Wenstrup's medical opinion was based on an uncritical acceptance of Plaintiff's subjective complaints.

The ALJ further rejected Dr. Wenstrup's opinion based on the contradictory opinions of Dr. Madireddi and two state agency physicians who found Plaintiff capable of performing a range of sedentary work. (A.R. 49). Dr. Madireddi examined Plaintiff in July 2001. (A.R. 313.) In addition to analyzing Plaintiff's MRI's, Dr. Madireddi assessed Plaintiff's range of motion and ambulation capabilities. Dr. Madireddi found that Plaintiff had a full range of motion in the upper extremities and cervical spine. (A.R. 313.) In contrast to Dr. Wenstrup's opinion, Dr. Madireddi found that Plaintiff had a full range of motion in his lower extremities, including ankle flexion, and straight leg raising

was negative bilaterally. (A.R. 314.) Dr. Madireddi found that
Plaintiff was able to ambulate without an assistive device, stand
on one foot, and walk with a normal gait. (A.R. 314.) As noted
above, Plaintiff declined to perform lumbar range of motion in
every plane during Dr. Madireddi's examination. (A.R. 314.)
Because Dr. Madireddi's contradictory opinion was supported by
independent clinical findings that differed from those of Dr.
Wenstrup, the ALJ properly credited it in determining Plaintiff's
residual functional capacity.

Plaintiff asserts that the ALJ effectively rejected Dr.
Madireddi's opinion because he did not accept it in its entirety.
Dr. Madireddi opined that Plaintiff could stand, walk, and sit for
six hours in an eight-hour day, lift ten pounds frequently and
twenty pounds occasionally, and should avoid stooping, crouching,
and crawling. (A.R. 314.) In contrast to Dr. Madireddi, the ALJ
found that Plaintiff could only stand and walk for two hours in an
eight-hour workday, lift ten pounds occasionally and five pounds
frequently, and should not climb or use ladders, ropes, or
scaffolds. (A.R. 72.) The ALJ stated the following regarding Dr.
Madireddi's opinion:

> After careful review of the overall record,
> the Administrative Law Judge generally agrees
> with Dr. Madireddi's conclusion as mostly
> consistent with the medical evidence of
> record; however, affording the claimant every
> benefit of all reasonable doubt finds a more
> restrictive residual functional capacity
> assessment.

(A.R. 49.)

Where the bases for an opinion are supported by objective
medical evidence, it is not necessary to agree with everything an

experts finds in order to hold that his or her testimony constitutes substantial evidence. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 753 (9th Cir. 1989). Even though the ALJ did not fully credit his residual functional capacity assessment, Dr. Madireddi made key objective findings during a physical examination that largely contradicted the opinion of Dr. Wenstrup. Furthermore, Plaintiff fails to distinguish between these objective findings and Dr. Madireddi's ultimate residual functional capacity assessment. Accordingly, the ALJ was entitled to rely upon portions of Dr. Madireddi's opinion and his objective findings in rejecting Dr. Wenstrup's assessment of Plaintiff's residual functional capacity.

The ALJ also rejected Dr. Wenstrup's opinion based on the conclusions of two state agency physicians who examined the medical evidence and evaluated Plaintiff's residual functional capacity. (A.R. 49.) The ALJ fully adopted the opinion of Dr. Jansen as consistent with the medical evidence in the record. (A.R. 49.) Dr. Jansen opined that Plaintiff retained the residual functional capacity to lift and carry five pounds frequently and ten pounds occasionally, stand and walk two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and occasionally balance, stoop, kneel, crouch, and crawl. (A.R. 323-329.) Dr. Jansen concluded that Plaintiff should avoid climbing and the use of ladders, ropes, and scaffolds. (A.R. 325.)

Medical evidence in the record supports the opinion of Dr. Jansen regarding Plaintiff's residual functional capacity. Plaintiff's treatment notes do not indicate that Plaintiff suffered from severe complications of disc herniation, sciatica, central cervical cord compression, or loss of vertebral height.

1  (A.R. 273, 287, 289.) Plaintiff's treating physicians noted mild

2  back spasms and sciatic notch tenderness on one occasion, but

3  these conditions were absent during subsequent appointments. (A.R.

4  304, 306.) Dr. Jansen specifically took into consideration

5  Plaintiff's history of degenerative disc disease and the MRI

6  evidence in assessing Plaintiff's residual functional capacity.

7  (A.R. 329.) In addition, Dr. Jansen's conclusion that Plaintiff

8  could perform a range of sedentary work was consistent with the

9  objective findings of Dr. Madireddi. (A.R. 314, 323-329.)

10  Accordingly, the ALJ properly attributed significant weight to the

11  opinion of Dr. Jansen, which was supported by substantial evidence

12  in the record.

13      The ALJ provided specific and legitimate reasons, supported

14  by substantial evidence, for rejecting the opinion of Dr.

15  Wenstrup. Thus, the Court rejects Plaintiff's assertion that the

16  ALJ improperly discredited Dr. Wenstrup's opinion in assessing

17  Plaintiff's residual functional capacity.

18      IV. <u>Disposition</u>

19      Based on the reasoning above, the Court concludes that the

20  ALJ's decision was supported by substantial evidence in the record

21  as a whole and was based on proper legal standards.

22      Accordingly, the Court AFFIRMS the administrative decision of

23  the Defendant Commissioner of Social Security and DENIES

24  Plaintiff's Social Security complaint.

25      The Clerk of the Court IS DIRECTED to enter judgment for

26  ///

27  ////

28  /////

1  Defendant Jo Anne B. Barnhart, Commissioner of Social Security,

2  and against Plaintiff Leslie Ritchotte.

3  IT IS SO ORDERED.

4  **Dated:    July 18, 2006**                    **/s/ Sandra M. Snyder**
   icido3                              UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28